904 P.2d 1239

**Donald J. LISA and Isabelle O. Lisa, Plaintiffs-Appellants,**

v.

**Jack STROM and Sara Strom, Defendants-Appellees.**

No. 1 CA-CV 93-0151.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 28, 1995.

Review Denied Oct. 24, 1995.

Lisa & Associates by Donald J. Lisa, Steven Lin, Scottsdale, for appellants.

Jack Strom and Sara Strom, in pro. per.

## OPINION

WEISBERG, Judge.

The primary issue in this appeal is whether an attorney-litigant and his spouse may recover attorney's fees when they have been represented by the attorney-litigant and his wholly-owned law firm. We hold that, notwithstanding the existence of an attorney-client relationship, the attorney-litigant and spouse are not entitled to an award of attorney's fees absent a genuine financial obligation on their part to pay such fees.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs Donald J. and Isabelle O. Lisa ("the Lisas") rented a residence from defendants Jack and Sara Strom ("the Stroms"), beginning in January, 1988. The lease provided for a security deposit of $2,850.00. At the expiration of the leasehold term, the Lisas decided not to renew. After moving out, the Lisas had the home professionally cleaned. They asked the Stroms to keep $100.00 of the security deposit for the cost to repair some minor damage to the bedroom ceiling and to refund the balance. The Stroms instead refunded only $755.66, withholding $2094.34 for alleged repair costs.

The Lisas sued the Stroms for wrongful failure to return the security deposit under Ariz.Rev.Stat.Ann. ("A.R.S.") · section 33-1321. Louis Hoffman ("Hoffman"), an associate in the law firm of Lisa & Lisa, was the attorney of record. Shortly thereafter, Lisa & Lisa disbanded, Hoffman left Lisa's employ, and his representation of the Lisas ceased. Mr. Lisa and Lisa & Associates were then named as counsel of record. Following mandatory arbitration, the arbitrator found in favor of the Lisas. The Stroms then appealed for a trial de novo.

A bench trial was held, with Donald Lisa as the attorney of record, representing himself and his spouse, with assistance from Lisa & Associates attorney Steven Lin ("Lin"). After trial, the court entered detailed findings of fact and conclusions of law, including the following:

2. The lease provided that plaintiffs pay a security deposit of $2,850.00, which sum was paid by plaintiffs;

3. The residence was vacated timely, and the keys were returned to the landlord. In addition, several witnesses testified that the property was left in an exceptionally clean condition. The carpeting had been professionally cleaned by plaintiffs immediately before leaving;

4. The defendants Strom on March 11, 1991, sent an itemization of expenses to plaintiffs which satisfied the requirements of A.R.S. § 13-1321(c). A check in the amount for [sic] $755.66 accompanied the

itemized statement as a partial refund of the security deposit;

5. The defendants Strom retained the sum of $2,094.34 from the security deposit for alleged damages to the residence, as set forth:

| | |
|---|---|
| $75.34 — | for changing of the locks |
| $430.00 — | house painting |
| $1,389.00— | replacement of front door because of damage |
| $200.00 — | ceiling repair in the master bedroom; |

6. The Court finds the defendants wrongfully withheld funds from the security deposit and that such withholding was wilful; that defendant should have returned $2,750.00 to plaintiffs; that only $100.00 for ceiling repairs was reasonable; that the withholding of $75.34 for lock replacement was unwarranted, especially when the lease itself limited such replacement to $25.00. No credible evidence was introduced by defendants that the residence needed painting or was ever painted. Furthermore, no evidence was ever introduced showing damage to the front door. The plaintiffs' videotape evidence showed beyond any question that the only minor "damage" to the doors were two tiny nail holes used for christmas [sic] wreaths. Even, at the time of these proceedings, the front door has not been replaced nor repaired.

7. Defendants Strom own a number of homes in the valley, at least nine properties. Defendants Strom have also been involved in numerous law suits regarding real estate. The defendant Jack Strom is knowledgeable in real estate matters, especially the landlord tenant area of the law;

8. The Court determines that the defendant wrongfully withheld the sum of $1,994.34 from plaintiffs in violation of A.R.S. § 33–1321(D) and plaintiffs are entitled in an amount twice the amount wrongfully withheld $3,988.68;

9. Plaintiff Donald Lisa is a licensed and actively practicing member of the Arizona State Bar. That he acted as his own attorney throughout the entire course of this litigation. It is undisputed in Arizona that when an attorney represents himself in a legal proceeding, he is not entitled to attorney's fees. *See, Connor v. Cal–Az Properties, Inc.,* 137 Ariz. 53, 56, 668 P.2d 896, 899 ( [App.] 1983); *Hunt Inv. Co. v. Eliot,* 154 Ariz. 357, 742 P.2d 858 ( [App.] 1987).

10. The Court finds that the defendant Jack Strom has defended this case without substantial justification and in bad faith. That he engaged in the abuse of the discovery process and that his defense was groundless in violation of A.R.S. §§ 12–349 and 12–350; accordingly,

IT IS ORDERED granting judgment in favor of plaintiffs and against defendants in the sum of $2,000.00, as an assessment for violating A.R.S. §§ 12–349 and 12–350. IT IS FURTHER ORDERED that plaintiffs are entitled to the sum of $3,988.68, which is twice the amount of $1,994.34 wrongfully withheld by defendants, pursuant to A.R.S. § 33–1321(D).

IT IS FURTHER ORDERED denying plaintiffs' request for attorney's fees.

The Lisas' motion to reconsider was denied. Following the court's entry of final judgment, the Lisas appealed.

## ISSUES

■ We address the following issues: [1]

1. Did the trial court err in denying attorney's fees under the lease and/or under A.R.S. section 12–349?

2. Did the trial court err in not awarding punitive damages to the Lisas?

3. Did the trial court err in not awarding treble damages for the wrongful withholding of the security deposit?

---

1. The Lisas also argue the trial court erred in not striking the "limited appearance" of Stroms' attorney, Russell Zarkou ("Zarkou") and imposing sanctions for this supposed violation of Rule XII(c)(1), Super.Ct.Unif.Prac.R. We do not address this issue, however, because the Lisas did not serve copies of the briefs on Zarkou, as required by Rule 4(b) Ariz.R.Civ.App.P. *Cf. Abril v. Harris,* 157 Ariz. 78, 754 P.2d 1353 (App.1987)

(holding that a non-party attorney, against whom the trial court imposed attorney's fees, had standing to appeal the judgment). In any event, we note that nothing in Rule XII(c)(1) mandates a sanction for its "violation." Assuming *arguendo* that sanctions are available for violating the rule, the trial court did not abuse its discretion in denying the motion.

## DISCUSSION

### I. Attorney's Fees

█ The Lisas requested attorney's fees pursuant to the lease,[2] which provided:

> In the event of judicial action, the prevailing party shall be entitled to reasonable attorney's fees and court costs from the losing party as determined by the Court as part of any judgment rendered in such action.

They also requested fees under A.R.S. section 12–349. Although the trial court found the Stroms had violated A.R.S. section 12–349, it concluded that the Lisas were not entitled to an award of attorney's fees on either basis because Mr. Lisa had "acted as his own attorney throughout the entire course of this litigation." In doing so, the trial court relied upon our decisions in *Connor v. Cal–Az Properties, Inc.*, 137 Ariz. 53, 668 P.2d 896 (App.1983), and *Hunt Inv. Co. v. Eliot*, 154 Ariz. 357, 742 P.2d 858 (App. 1987).

The Lisas argue on appeal that the trial court's finding was wrong because Donald Lisa was representing Isabelle Lisa in addition to himself and because they were also represented by other attorneys who were associates in his law firm.

In *Connor*, the trial court had granted the plaintiffs, three attorneys who represented themselves in the action, an award of attorney's fees pursuant to a clause in the real estate contract. On appeal, we held that a licensed attorney who represents himself in litigation is not entitled to an award of attorney's fees because of the lack of an attorney-client relationship:

> In Arizona, one who acts only for himself in legal matters is not considered to be engaged in the practice of law. *State ex rel. Frohmiller v. Hendrix*, 59 Ariz. 184, 190, 124 P.2d 768, 772 (1942). Even though the buyers in this case were themselves all attorneys, and carried out tasks ordinarily performed by lawyers, their activities did not constitute the practice of law because they represented themselves.

. . . . .

> In our opinion, the presence of an attorney-client relationship is a prerequisite to the recovery of attorneys' fees. The "creation of the relation of attorney and client ... is essential to the right of an attorney to recover compensation for his services rendered." 1 S. Speiser, Attorneys' Fees § 4:1 at 147 (1973).

137 Ariz. at 56, 668 P.2d at 899 (citations omitted). The Lisas argue that *Connor* is distinguishable because Donald Lisa did not represent himself only, he also represented Isabelle and the marital community. The Lisas rely upon our decision in *Hunt*, 154 Ariz. 357, 742 P.2d 858.

In *Hunt*, the issue was whether an attorney, Simon, who represented himself, another partner and a partnership, was entitled to an award of attorney's fees. We held that in such a case the attorney was engaged in the practice of law and therefore the attorney's fees provision applied. In so holding, we distinguished *Connor*:

> The *Connor* court stated that "one who acts *only* for himself is not considered to be engaged in the practice of law." 137 Ariz. at 56, 668 P.2d at 899 (emphasis added). Thus, the question is whether Simon acted *only* for himself. In *Connor*, the three plaintiffs were attorneys who represented themselves in the lawsuit. In this case, however, the plaintiff is a partnership, as opposed to a natural person. . . . [W]e do not believe a partnership can represent itself because it is not a natural person.

154 Ariz. at 362, 742 P.2d at 863.

We noted that, in representing his own half-interest in the partnership, the attorney "would not be considered engaged in the practice of law." *Id.* However, if he had not been an attorney, he could not have represented either the other one-half partnership interest or the partnership itself. *Id.* Because Simon was an attorney, he could repre-

---

**2.** Although the Lisas also argue they are entitled to fees under A.R.S. section 12–341.01(A), when a contract has an attorney's fees provision it controls to the exclusion of the statute. *Sweis v. Chatwin*, 120 Ariz. 249, 252, 585 P.2d 269, 272 (App.1978).

sent the other partnership interest and the partnership, and this created an attorney-client relationship:

> Simon was acting on behalf of the primary beneficiaries' interest, as well as his own. He therefore was not acting *only* for himself. The necessary conclusion is that he acted in his capacity as an attorney, in an attorney-client relationship.

> We do not ignore the basic partnership premise that every partner is an agent of the partnership, and that a partner has the ability to act for and bind a partnership. A.R.S. § 29-209(A). A spouse has a similar ability to act for and on behalf of the other spouse, and to bind the marital community. Yet, a spouse not licensed to practice law cannot represent his or her spouse in legal matters. *Haberkorn,* 5 Ariz.App. at 399, 427 P.2d at 380. Similarly, we hold a partner, except if in an attorney-client relationship, cannot represent his partners or the partnership in legal matters.

*Id.* at 363, 742 P.2d at 864. Since Simon was engaged in the practice of law when he represented himself and the partnership, we held him entitled to an award of attorney's fees. *Id.*

Here, there is no question that Donald Lisa was acting not only on his own behalf, but also on behalf of his wife and their marital community. *Cf. Haberkorn v. Sears, Roebuck .& Co.,* 5 Ariz.App. 397, 399, 427 P.2d 378, 380. There consequently was an attorney-client relationship and Lisa was engaged in the practice of law.

▮ While *Connor* and *Hunt* held that an attorney-client relationship is a prerequisite to recovery of attorney's fees, this is not the *only* requirement: we believe that public policy considerations, including the integrity of the judicial system and the public's perception of it, require that an additional, indispensable requirement to an award of attorney's fees to *pro se* attorneys be a genuine financial obligation on the part of the litigants to pay such fees.[3] *See, e.g., Swanson*

& *Setzke, Chtd. v. Henning,* 116 Idaho 199, 202–03, 774 P.2d 909, 912–13 (Ct.App.1989).

The general rule against awarding fees to attorney-litigants is based upon a perception that such awards are windfalls to persons who have spent no money and incurred no debt for legal representation. *See, e.g., Swanson,* 116 Idaho at 202, 774 P.2d at 912; *Crooker v. United States Dept. of Justice,* 632 F.2d 916, 920–921 (1st Cir.1980); *Hannon v. Security Nat'l Bank,* 537 F.2d 327, 328 n. 1 (9th Cir.1976). The Lisas contend that this rationale is defective because it ignores their "opportunity" cost—that is, the foregone income or loss of time that Lisa might have devoted to representing other clients.

We recognize that the Lisas may have suffered some financial detriment as a result of the time Mr. Lisa spent working on this matter. A non-lawyer *pro se* litigant, however, also suffers an "opportunity" cost, yet has no right to recover for his time spent preparing for litigation. Moreover, because of his unfamiliarity with the practice of law, a *layman* appearing *pro se* must spend more time preparing for the case than the *lawyer* appearing *pro se.* The time a layman spends in court, preparing memoranda, investigating facts, is time when he cannot be practicing his own trade—but we do not allow him an award of fees for time spent working on the case because his recoverable attorney's fees are those he is reasonably obligated to pay his attorney, not his "opportunity" costs.

The judicial system would be unfair if an attorney-litigant could qualify for a fee award without incurring the potential out-of-pocket obligation that the opposing nonlawyer party must bear in order to qualify for a similar award. Moreover, when both parties opt to litigate *pro se,* it would be palpably unjust for one of them (the *pro se* lawyer) to be eligible for an attorney's fee award, while the other (the *pro se* layman) would not.

As noted in *Connor,*

> We cannot ... have one rule which provides for compensation to attorneys when acting on their own behalf and another

---

**3.** Obviously, a contingent fee agreement is unaffected by our decision today, as an agreement to

pay attorney's fees out of the recovery itself *is* a genuine financial obligation.

rule for lay persons acting on their own behalf.... [T]he leverage which would be granted to attorneys appearing on their own behalf could easily become oppressive where the opposition is forced to incur legal expenses.

137 Ariz. at 56, 668 P.2d at 899.

We also believe that the dignity of the courts and attorneys would suffer if attorneys could pursue relatively small suits and, through use of the marital community, charge large fees without incurring any real obligation to pay such fees. We voiced this same concern in *Connor:*

> [a]ttorneys representing themselves might be tempted to protract litigation for their own financial betterment. To grant fees to parties appearing *pro se* will, in our view, create incentives to protract and delay litigation. It may well foster litigation over specious claims and in many cases the prospect of a fee award could be the principal motivating factor behind a lawsuit.

*Id.* at 55–56, 668 P.2d at 898–99.

In this case, the Lisas candidly admit that, although there was an oral fee agreement, neither Mrs. Lisa nor the community would reimburse either Mr. Lisa or Lisa & Associates for any time expended, absent an award of fees by the court.

■ Attorney's fees are meant to make a party whole for costs incurred for an attorney's services. Unlike the circumstances in *Hunt* where a partnership was paying one partner for his services, any payment in this case would be made by the community to itself. This is not to say that an attorney can never represent his spouse and recover fees; an award may be appropriate when the separate property of one spouse is used to pay fees to an attorney-spouse. But a financial obligation from the community to itself is no obligation at all. An award of fees is therefore inappropriate.

For these same reasons, the Lisas are not entitled to an award of attorney's fees based on the services provided by Lisa & Associates employees, Lin and Hoffman. Both attorneys were paid a salary by Donald Lisa

regardless of what matters they worked on. There is no suggestion that either Lin or Hoffman have benefited or would benefit personally from an award of attorney's fees to the Lisas. There can be no award of attorney's fees unless an attorney-litigant is obligated to pay such fees. Here, the Lisas are not obligated to pay such fees, and therefore are not entitled to such an award.

## II. Punitive Damages

During the trial, the Lisas moved to amend their complaint to conform to the proofs at trial and to include a prayer for punitive damages. The trial court granted the Lisas' motion to amend, but did not award any punitive damages. The Lisas argue that the trial court erred. We disagree.

■ The Lisas alleged that they suffered emotional distress as a result of Strom's wrongful withholding of the security deposit and vexatious conduct during the subsequent litigation. They sought $10,000.00 in actual and $150,000.00 in punitive damages based solely on the emotional distress claim. Emotional distress damages are recoverable for a landlord's "culpable" violation of the Arizona Residential Landlord and Tenant Act.[4] *Thomas v. Goudreault,* 163 Ariz. 159, 164–65, 786 P.2d 1010, 1015–16 (App.1989).

■ During trial, both Mr. and Mrs. Lisa testified to their emotional distress, and they submitted medical bills incurred by Mrs. Lisa for treatment. In addition, the trial court found that Strom's withholding of the deposit was wilful, in bad faith and without substantial justification, and that his defense was groundless. The trial court did not, however, award any damages for emotional distress. Because the Lisas have not appealed from the trial court's denial of actual damages for emotional distress, any error is waived. *See* Ariz.R.Civ.App.P. 13(a)(6); *DeElena v. Southern Pac. Co.,* 121 Ariz. 563, 572, 592 P.2d 759, 768 (1979). Without a recovery of actual damages, punitive damages cannot be awarded. *Koepnick v. Sears Roebuck & Co.,* 158 Ariz. 322, 332, 762 P.2d 609, 619 (App.1988). Accordingly, we find no

4. A.R.S. §§ 33–1301 to 33–1381.

error in the trial court's failure to award punitive damages.

### III. Treble Damages

 The Lisas also argue that the trial court erred in only awarding double damages for the wrongful withholding of their security deposit. We agree.

Upon termination of a residential tenancy, the landlord must return so much of the security deposit as is not available to the landlord as damages for the tenant's failure to keep the premises in good condition. A.R.S. § 33–1321(C). If the landlord fails to return the security deposit, "the tenant may recover the ... money due him together with damages in an amount equal to twice the amount wrongfully withheld." A.R.S. § 33–1321(D). The statute therefore allows the tenant to recover a judgment equal to three times the amount wrongfully withheld: first, the tenant can recover the money wrongfully withheld and still due; second, the tenant is allowed to receive as damages an additional amount equal to twice the amount withheld. In this case, the trial court only awarded the Lisas a judgment equal to twice the amount withheld. Because the statute requires an award equal to treble damages, the trial court erred.

### CONCLUSION

We affirm the trial court's denial of attorney's fees and punitive damages. We reverse the trial court's award of double damages related to the wrongful withholding of the balance of security deposit and remand with directions that the court enter judgment for treble damages.

EHRLICH, P.J., and VOSS, J., concur.